*Margin notes:* VIRGINIA, Nov. 1791. Com'wealth v. Crane.

See ante, vol. 1.

---

## PORTLAND, (MAINE,) JUNE, 1824.

The State
v.                    } LIBEL.
Nathaniel G. Jewett.

Present—*Smith*, Justice.

On Friday and Saturday last, an indictment for a libel was tried before the Court of Common Pleas in this ingham's case, ante p. 428. and vol. 1. p. 354. It is not the province of the jury, (notwithstanding they are judges of the law and fact) to decide what is proper evidence ; it is the privilege of the court.

*Margin note:* For the law in relation to libels see Buck-

PORTL'ND,
June, 1824.

The State
v.
Jewett.

town, Judge Smith on the bench. The complainant was Abijah W. Thayer, printer of the Portland Statesman ; and the defendant Mr. Nathaniel G. Jewett. The indictment was founded on an address to the public, signed by N. G. Jewett, and published in the Argus, on the second of December last. This address was one of several communications published about that time, alternately by Thayer and Jewett, relative to the publication of a directory of the town of Portland. The paragraphs introduced into the indictment, and considered by the grand jury as libellous, were two, as follows : " I (meaning said Jewett) never in my life purchased a printing establishment, packed up all the printing utensils within my reach, between two days made my escape from an honest and unsuspecting creditor, and retreated to the sea-board, with a view of committing my fortunes to the chances of a voyage ; but ere I had accomplished my design, was pursued and detected by the vigilance of that creditor, and compelled ignominiously to acknowledge my villanous conduct." This paragraph the grand jury explained to mean, that the said Thayer did purchase a printing establishment, &c. &c. The other paragraph, as rendered in the indictment, was as follows : " I shall here cease, and no longer invite public attention to a barren waste, (meaning said Thayer,) where nothing but baseness and perfidy luxuriate, and to a character (meaning said Thayer,) from the contemplation of which every honest man must turn with emotions of commingled pity and disgust."

The indictment having been read, the attorney for the government explained to the jury the law of libels generally, and read from various authorities, showing what constitutes a libel, and urging reasons why the laws should be enforced. It was admitted, he said, on the part of the defendant, that the piece on which the indictment was founded was written by him, and the only question, therefore, for the consideration of the jury, would be whether the piece was libellous.

Mr. *Deblois* opened the defence. He considered it a matter of regret, that this affair, trifling as it was in the outset should ever have been suffered to acquire such an importance as was now attached to it, or that it should ever have been obtruded upon the public notice at all. He briefly states the origin of the contest between

Thayer and Jewett ; that they had agreed to publish in company a directory of the town of Portland, and share the profits between them ; that some misunderstanding arose as to the terms of agreement; they separated, and each published a separate directory. He considered it the duty of the opening counsel, to give a general view of the case; and explain the nature of the testimony which would be adduced, without stopping to comment upon it as he passed. It would be proved to the jury, he said, that Thayer was the first agressor ; that he commenced the warfare, and made the attack on Jewett. From pieces which would be exhibited to the jury, they would be convinced that Jewett acted only on the defensive, and that Thayer's publications against him were infinitely more gross and unjustifiable than his against Thayer. Here he was interrupted by the attorney for government, who objected to the kind of evidence proposed to be adduced ; he wished the management of the cause to be kept within legal bounds. Other publications in the newspapers could have no bearing upon the case now in question ; one libel could never be adduced as a justification for another, and, whatever Thayer might have published, it would not alter the character of the piece on which the present indictment was founded. Upon this, a long conversation arose between the court and General Fessenden, counsel for the defendant. Mr Fessenden claimed the right to read to the jury all the pieces touching the subject in question, published by Thayer as well as Jewett. The court inquired what was expected to be proved by them. The counsel for the defendant stated, that they would go to show that the language applied to Thayer in the first charge in the indictment, was not correctly applied. Thayer had published various charges against Jewett, and the language of Jewett, which had been applied by inuendo to Thayer, was a mere negation, and applied in reality, as it did literally, to himself. The court, after examining the articles referred to, decided that they could not bear such an inference, and objected to their being read to the jury. The counsel for the defendant then claimed the privilege of giving the truth in evidence with respect to the second charge in the indictment, and proposed to read the communications for that purpose. But the court decided that this was not one

of the cases contemplated by the constitution, where the truth may be given in evidence ; that provision of the constitution referred to libels against public officers and candidates for public office. The counsel for the defendant then claimed another authority for presenting these communications to the jury. In cases of libel, the constitution of this state has made the jury the judges both of the law and the fact ; and it was, therefore, their province to decide whether the testimony was proper to come before them or not. To this the court also objected. There must be some one to judge whether testimony was relevant to the case or not, otherwise testimony might be offered without end ; and the court must, from the necessity of the case, decide what evidence was proper to go to the jury ; and after the evidence was before them, it would belong to the jury to judge both the law and the fact. So the several communications were finally barred from being adduced as evidence, and the counsel for the defendant made his argument from the article alone, on which the indictment was founded.

With respect to the first charge, the counsel for the defendant contended that the inuendo by which the language was applied to Thayer, was not made out ; that Jewett had made the declaration concerning himself, and that it was a forced construction to apply it to Thayer. With respect to the second charge, if the jury should think that the language did apply to Thayer, he should contend for the right of giving the truth in evidence in justification of the defendant. In this free country he could never acknowledge the correctness of the doctrine, "the greater the truth, the greater the libel." The constitution of this state had wisely provided, that in all actions for libel, where the matter published was proper for public information, the truth of the case might be given in evidence. The publisher of a newspaper was, in a certain sense, a public officer ; the community was deeply interested in his character and conduct, and any testiment of facts concerning his character and principles, was proper for public information. If the language in the second charge of the indictment did apply to Thayer, Jewett had charged him with being " a character, from the contemplation of which every honest

man must turn with emotions of commingled pity and disgust." This charge, he believed, was strictly true and just, and he should have been able to prove it satisfactorily to the jury, had he been permitted to bring forward the testimony which he proposed. No candid person could examine the numbers of the Statesman for two years past without admitting that every honest man must turn from the publisher with emotions of pity and disgust. Scarcely a number of that paper could be found, which did not contain most gross and scandalous libels upon some of the most respectable characters in the state. It was full of the vilest abuse, both upon individuals and the government. And although he was not allowed to lay the papers before the jury as evidence, he trusted that the gentlemen of the jury had already sufficient knowledge of the general character of the paper to satisfy them that every honest man must turn from the publisher with pity and disgust; that they themselves would turn from him with pity and disgust; and if so, he trusted they would by no means consent to punish Jewett for having stated what he believed to be true, and what it was certainly important for the community to know.

The attorney for government replied, in detail, to the argument of the counsel for the defendant. He considered it perfectly obvious, that the language of the first charge in the indictment did apply to Thayer; it would so appear to the common sense of every reader, and so the jury would be bound to consider it. As to the second charge, whether it were true or false, was not material. It mattered not how many libels Thayer had published; if this was a libel against him, it was an offence against the state, and as such ought to be punished.

In charging the jury, the Judge stated his impressions of the law, and directed the jury to give them what weight they, in their discretion, might think proper, the constitution having made them the judges both of the law and the fact.

The jury retired about ten o'clock on Saturday, and were out till after four, when they came in and stated *that they were unable to agree.* Upon which they were discharged, and the cause continued to the next term.